UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUCINDA MARIE BALL,

                              Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.
_____

**REPORT
and
RECOMMENDATION**

**09-CV-40A(F)**

APPEARANCES:          FELICE A. BRODSKY
                              Attorney for Plaintiff
                              125-B Professional Parkway
                              P.O. Box 557
                              Lockport, New York 14095

                              WILLIAM J. HOCHUL, JR.
                              United States Attorney
                              Attorney for Defendant
                              KEVIN D. ROBINSON
                              Assistant United States Attorney, of Counsel
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202

## <u>JURISDICTION</u>

This action was referred to the undersigned by Honorable Richard J. Arcara

on May 8, 2009. The matter is presently before the court on Defendant's motion for

judgment on the pleadings filed on October 2, 2009. (Doc. No. 7).

## <u>BACKGROUND</u>

Plaintiff, Lucinda M. Ball ("Plaintiff"), seeks review of Defendant's decision

denying her Social Security Disability Insurance ("SSDI"), and Supplemental Security

Income ("SSI") (together, "disability benefits") under, respectively, Titles II and XVI of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined Plaintiff had not engaged in substantial gainful activity since December 6, 2005, that Plaintiff had the severe impairments of depressive disorder/dysthymic disorder, and asthma, but that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926. (R. 13)[1].   Defendant also determined that although Plaintiff had the residual functional capacity to perform work at all exertional levels, Plaintiff had the residual functional capacity to perform the representative occupations of plastic molding machine tender, and packaging machine tender, within twelve months of the alleged onset date. (R. 20). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision. *Id*.


## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on December 6, 2005 (R. 63); that was initially denied by Defendant on May 15, 2006. (R. 53-56). Pursuant to Plaintiff's request, filed June 1, 2006 (R. 66), a hearing was held before Administrative Law Judge Lamar Davis ("the ALJ") on April 29, 2008, in Buffalo, New York. (R. 253-70). The Plaintiff, represented by Felice M. Brodsky, Esq. ("Ms.

---

[1] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

Brodsky"), appeared and testified at the hearing. Testimony was also given by vocational expert Jay Steinbrenner ("the VE"). (R. 263-69). The ALJ's decision denying the claim was rendered on June 25, 2008. (R. 11-21).

On July 16, 2006, Plaintiff requested review of the ALJ's decision by the Appeals Council (R. 7), which became Defendant's final decision when the Appeal's Council denied Plaintiff's request for review on November 13, 2008. (R. 2-4). This action followed on January 12, 2009, with Plaintiff alleging the ALJ's decision that, as of November 30, 2005, Plaintiff was not disabled, was not based on substantial evidence in the record. (Doc. No. 1).

Following the filing of Defendant's answer on May 5, 2009, including the record of the administrative proceedings (Doc. No. 4), on October 2, 2009, Defendant filed the instant motion for judgment on the pleadings ("Defendant's motion"), together with a memorandum of law (Doc. No. 8) ("Defendant's Memorandum"). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be DENIED and the matter remanded for a rehearing consistent with Section 1F of this Report and Recommendation.

## FACTS[2]

Plaintiff, was born April 2, 1963, has a general education diploma, and lives with her two minor children. (R. 63, 254). Plaintiff, has previously worked as a

---

[2] Taken from the pleadings and the administrative record.

jewelry salesperson from June 1991 to December 1991, a data entry clerk from November 2001 to June 2002, and an assembly line worker from May 1999 to March 2001. (R. 85). Plaintiff alleges she is disabled because she suffers from asthma, generalized anxiety disorder, depression, and alcoholism. (Doc. 1).

On May 12, 2005, Plaintiff was arrested for endangering the welfare of her children (R. 164-65), and entered alcohol abuse treatment from May 19, 2005, until the date of the application for disability benefits on December 6, 2005. Plaintiff received psychotheraputic treatment counseling from Niagara County Mental Health ("NCMH") from July 27, 2005, until November 17, 2005 (R. 233-38), and denies any use of alcohol from May 19, 2005, until the date of hearing on April 29, 2008. (R. 254).

On December 1, 2005, relevant to her disability benefits application, Plaintiff received treatment counseling at Niagara County Mental Health ("NCMH") from Licensed Clinical Social Worker Robert J. Kupolinski[3] ("Therapist Kupolinski"), who noted Plaintiff slept three to four hours each night, that Plaintiff's negative thoughts had decreased, assessed Plaintiff with a Global Assessment of Functioning ("GAF")[4] score of 55, and diagnosed Plaintiff with depression. (R. 231-32). On December 14, 2005, Plaintiff received psychotherapy treatment from Therapist Kupolinski, who

---

[3] The signature in the record is illegible.

[4]The Global Assessment of Functioning (GAF) scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF of 41-50 indicates: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or **any serious impairment in social, occupational, or social functioning** (e.g., no friends, unable to keep a job) . . . A GAF of 51-60 [indicates] moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or social functioning (e.g., few friends, conflicts with peers or co-workers." DSM-IV-TR" at 32 (emphasis in original).

noted Plaintiff was having difficulty changing her negative thoughts, and assessed Plaintiff with a GAF score of 55. (R. 230). Therapist Koysilinski treated Plaintiff on December 28, 2005, noting Plaintiff's negative thoughts were decreasing, and assessing Plaintiff with a GAF score of 57. (R. 229).

On January 5, 2006, P. Hoffarth, M.D. ("Dr. Haffarth") conducted a medical report for disability determination, and evaluated Plaintiff with depression and "normal" physical bodily systems. (R. 119). On January 25, 2006, Plaintiff's treatment was transferred to Deborah A. Noble, LCSW (Licensed Clinical Social Worker) ("Therapist Noble"), who noted Plaintiff was "depressed," "tearful throughout [the therapy] session," and that Plaintiff reported she was "not sleeping most nights." (R. 227). Therapist Noble assessed Plaintiff with a GAF score of 57. *Id*. On February 23, 2006, Therapist Noble evaluated Plaintiff with a GAF score of 55, noted Plaintiff complained of being "up all night, most nights" and a "depressed mood most days." (R. 225). On March 13, 2006, Prabhakar R. Gumbula, M.D. ("Dr. Gumbula"), Plaintiff's consulting psychiatrist, evaluated Plaintiff with goal oriented thought processes, no recent episodes of feeling overwhelmed, noted Plaintiff's affect as "somewhat constricted and anxious," changed Plaintiff's anti-depressive medication from Remeron to Lexapro, and also prescribed Ambien (a sleep aid). (R. 215). Correspondence to Niagara County Family Treatment Court on April 4, 2006, from Northpointe Council, Inc. (formerly Alcoholism Council of Niagara County) ("Northpointe"), reflected Northpointe was concerned about Plaintiff's depression. (R. 213). On April 7, 2006, Therapist Noble noted Plaintiff reported improved sleep (four to six hours of sleep each night), and assessed Plaintiff with a GAF score of 57. (R.

212). On April 17, 2006, Christine Holland, M.D. ("Dr. Holland") conducted an internal medical examination on Plaintiff, and noted Plaintiff reported she cooked four to five times each week, did laundry once a week, shopped once a month, and took care of her children on a daily basis. (R. 205). Dr. Holland noted Plaintiff "looked tired," and otherwise experienced no physical limitations. (R. 206).

A psychiatric evaluation of Plaintiff on April 17, 2006, by Renee Baskin, Phd., ("Dr. Baskin"), showed Plaintiff's "[d]epressive symptomology . . . remarkable for dysphoric moods, fatigue/ loss of energy, crying spells, feelings of hopelessness, irritability and social withdrawal . . . [Plaintiff's] [a]nxiety related symptomology . . . remarkable for restlessness, and muscle tension . . . [and Plaintiff's] cognitive symptomology . . . remarkable for short-term memory deficits and concentration difficulties." (R. 208). Dr. Baskin opined Plaintiff was able to follow and understand simple instructions and perform simple tasks independently, but may have difficulty making appropriate decisions, relating to others, and appropriately dealing with stress. (R. 210). Dr. Baskin diagnosed Plaintiff with depressive order NOS (not otherwise specified), and alcohol abuse in remission, and noted Plaintiff's results were consistent with psychiatric and substance abuse problems, which "may significantly interfere with [Plaintiff's] ability to function on a daily basis." *Id*.

On May 8, 2006, Dr. Gumbula evaluated Plaintiff and noted Plaintiff reported she was depressed and that the current medication was not helping her. (R. 139). Dr. Gumbula changed Plaintiff's anti-depressive to Wellbutrin and noted Plaintiff was "anxious." *Id*.

On May 12, 2006, Hillary Tzetzo, M.D. ("Dr. Tzetzo"), conducted a mental

residual functional capacity assessment on Plaintiff, and evaluated Plaintiff with moderate limitations of the ability to carry out instructions, maintain concentration, perform activities within a schedule, and complete a normal workday, noting Plaintiff's affect was restricted, and her mood dysthymic (mood characterized by depression) (R. 172-73). Dr. Tzetzo opined Plaintiff's "attention and concentration were mildly impaired by the emotional distress of presenting for the [exam]," that Plaintiff was capable of performing simple tasks, following simple instructions, maintaining concentration and learning new tasks, and, that Dr. Tzetzo's results were consistent with Dr. Baskin's examination results, in particular, that Plaintiff's "psychiatric and substance abuse allegations . . . may interfere with [Plaintiff's] ability to function on a daily basis." (R. 174).

A treatment session with Therapist Noble on June 5, 2006, showed Plaintiff reported "feeling somewhat better" on the new medication, but continued to experience difficulty sleeping. (R. 153). A mental health examination by NCMH on June 6, 2006, showed Plaintiff with depressed mood, low energy, and frequent crying. (R. 116). On June 7, 2006, Plaintiff visited John J. Bodkin, II, M.D. ("Dr. Bodkin"), Plaintiff's family physician, who noted Plaintiff reported she was "doing poorly," and having difficulty sleeping" (R. 113), diagnosed Plaintiff with bronchopneumonia and prescribed Keflex (an antibiotic). *Id*. After Plaintiff continued to exhibit wheezing symptoms on June 20, 2006, Dr. Bodkin prescribed Advair (asthma drug). (R. 111). On July 11, 2006, Plaintiff returned to Dr. Bodkin's office where Physician Assistant Brie Anne Crowther ("PA Crowther") diagnosed Plaintiff with acute asthmatic bronchitis. (R. 110).

On July 12, 2006, Therapist Noble noted Plaintiff was tearful throughout the session, that Plaintiff reported she experienced negative thoughts about everything, and that Plaintiff planned to return to Dr. Gumbula to have her anti-depressant medication increased. (R. 152). Therapist Noble assessed Plaintiff with a GAF score of 57. Plaintiff returned to Therapist Noble On September 25, 2006, with complaints of continued sleep disturbances (sleeping two to three hours each night), fatigue, no daytime energy, depressed mood, difficulty concentrating, and irritability. (R. 151). Therapist Noble assessed Plaintiff with a GAF of 57. *Id*.

On November 20, 2006, Dr. Gumbula evaluated Plaintiff noting Plaintiff stated the Wellbutrin dosage (150 mg) was "helpful." (R. 137). On March 1, 2007, Therapist Noble noted Plaintiff stated she had not made any progress decreasing her depression and negative self-talk, and had missed two appointments with Dr. Gumbula and Therpaist Noble. (R.148). On January 25, 2007, Therpaist Noble noted Plaintiff reported her children's behavior was out of her control, discussed Plaintiff's poor therapy attendance problem, and advised Plaintiff her case would be closed if she continued to miss scheduled therapy appointments. (R. 150). Plaintiff stated she did not want her case closed. *Id*. On April 16, 2007, Plaintiff returned to Dr. Gumbula who examined Plaintiff, noted Plaintiff appeared "anxious," and increased Plaintiff's dosage of Wellbutrin to 450 mg. (R. 136).

On May 14, 2007, Therapist Noble noted Plaintiff complained of lack of energy, difficulty sleeping, and lack of motivation. (R. 146). A July 16, 2007, treatment visit to Dr. Gumbula showed Plaintiff "depressed and anxious." (R. 135). On August 8, 2007, Therapist Noble reported Plaintiff had completed a depression

inventory that placed her in the "severe" depression category, that Plaintiff was "withdrawn," and that Plaintiff stated it was difficult for her to interact in therapy sessions. (R. 145). Therapist Noble assessed Plaintiff with a GAF score of 55, and transferred Plaintiff's treatment to an alternate therapist in an attempt to help Plaintiff become more engaged in therapy. *Id*.

On December 5, 2007, Michelle Senecal-Hunt, LMSW (Licensed Master Social Worker) ("Therapist Senecal-Hunt"), assessed Plaintiff's GAF score at 45, and reported Plaintiff stated she "ha[d] trouble with positive thoughts and being positive." (R. 143). On March 11, 2008, Therapist Senecal-Hunt evaluated Plaintiff with a GAF score of 45, and noted Plaintiff had experienced an increase in her depression, had problems using coping skills, decreased functioning, problems with positive thoughts, and believed her medication was not working well. (R. 141). Therapist Senecal-Hunt increased Plaintiff's therapy sessions to once per month. *Id*.

On March 21, 2008, Salvatore R. Pecoraro, M.D. ("Dr. Pecoraro") performed a head computerized tomography test (head CT) on Plaintiff that showed normal results. (R. 121). An asthma check-up with Dr. Bodkin's office on March 27, 2008, showed Plaintiff with markedly decreased airflow, and the inability to perform peak flows (test to measure lung exhalation) despite several attempts. (R. 103-05). On April 3, 2008, Therapist  Senecal-Hunt noted Plaintiff reported an increase in her depressive symptoms, and assessed Plaintiff with a GAF score of 45. (R. 140).

On April 21, 2008, at the request of Plaintiff's attorney, Dr. Gumbula completed a mental residual functional capacity impairment questionnaire, and evaluated Plaintiff with "marked" limitations to activities of daily living, repeated

episodes of decompensation of extended duration, extreme difficulties in maintaining social functioning, and constant deficiencies in maintaining concentration, persistence or pace. (R. 133). Dr. Gumbula opined Plaintiff's persistent depressive symptoms and social functioning problems would limit her ability to work at a regular job on a sustained basis. *Id.*

Plaintiff testified she experienced thoughts of suicide, cried "all the time," didn't feel like leaving her room, or house, missed therapy appointments because she had a poor memory, did not see friends or talk to anyone on the phone, and spent most days in her room watching television. (R. 257-59).

At the administrative hearing on April 29, 2008, the ALJ posed a hypothetical to the VE that included whether an individual the same age, educational background, and vocational history of Plaintiff, precluded from exposure to unprotected heights and machinery, temperature extremes, excessive humidity, fumes, dust, and airborne particles, relegated to simple routine tasks of incidental exercise of independent judgment and discretion, with no piecework production pace work, and incidental interaction with the public, would be capable of performing any of Plaintiff's past relevant work. (R. 265). The VE testified Plaintiff's past work of assembly line worker could be performed under the hypothetical posed by the ALJ, but not Plaintiff's past work as a janitorial cleaner and data entry clerk, *id*., and non-transferable work as a plastic molding machine tender. *Id*. The ALJ posed an additional limitation that included non-scheduled work breaks of ten minutes each hour, indeterminate in number and frequency (R. 267-68), which the VE testified would result in total erosion of the occupational base for both plastic molding

machine tender and packaging machine tender. *Id*.


## DISCUSSION

1. **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social

Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months. . ..  An
> individual shall be determined to be under a disability
> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform

any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant. *Parker v.

Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A. **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative

law judge's findings are supported by substantial evidence. *Richardson v. Perales*,

402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion." *Pollard v. Halter,* 377 F.3d 183, 188 (2d Cir. 2004) (citing *Richardson*, 402 U.S. at 401 (quoting *Consol. v. NLRB*, 305 U.S. 197, 229 (1938)).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d); *Scherler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. 42 U.S.C. §§ 405(g) and 1383(c)(3); *Dumas v. Schweiker, supra*, at 1550. "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). Relevant evidence includes evidence from acceptable medical sources, medical reports including clinical and laboratory findings, diagnoses, prescribed treatment, residual functional capacity

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

evaluations, and statements from non-medical sources regarding the severity of the impairment. 20 C.F.R. § 404.1513.

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period of which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[6] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, *

---

[6] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education, and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v. Schweiker, supra*, at 467 (where impairment(s) are not among those listed, claimant must show that she is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry, supra*, at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson v. Perales*, 402 U.S. 389, 410 (1971).

**B.**    **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" for pay or profit. 20 C.F.R. §

404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In this case, the ALJ concluded Plaintiff did not engage in substantial gainful activity since June 9, 2005, the onset date of the alleged disability. (R. 12). Plaintiff does not contest this finding.

### C.    Severe Physical or Mental Impairment

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. §§ 404.1509, 416.909, and significantly limits the Plaintiff's ability to do "basic work activities." The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking, understanding, carrying out, and remembering simple instructions, use of judgment; responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

Here, the ALJ found Plaintiff had the severe impairments of depressive disorder/dysthymic disorder and asthma. (R. 13). Plaintiff does not contest this finding.

### D.    Listing of Impairments, Appendix 1

The third step is to determine whether any of a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt.

P ("the Listing"). If the impairment or impairments are listed in the Appendix and the listing's durational requirements are satisfied, the impairment or impairments are considered severe enough to prevent an individual from performing any gainful activity and the individual is deemed disabled, regardless of the applicant's age, education or work experience. 20 C.F.R. § 404.1525 (a) and 416.925(a); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").

Here, the ALJ, as required, evaluated Plaintiff's impairment under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, directed to consideration of the Listing of Impairments, and determined Plaintiff's impairments were not accompanied by the required clinical signs and diagnostic findings to establish disability based on a listed impairment under the Act. (R. 13). The relevant listed impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, §3.03 ("§3.03") (Asthma) and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§12.04") (Affective Disorders).

Under § 3.03, asthma must be characterized by

A. Chronic asthmatic bronchitis (evaluated under the criteria for chronic obstructive pulmonary disease in 3.02A; Or
B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine frequency of attacks.

Although substantial evidence in the record supports Plaintiff was diagnosed with bronchopneumonia by Dr. Bodkin on June 7, 2006 (R. 113), and acute asthmatic bronchitis on July 11, 2006 (R. 110), substantial evidence in the record does not establish Plaintiff met the criteria under § 3.03A or § 3.03B. As such, the ALJ's

finding Plaintiff was not disabled under § 3.03 of the Listing of Impairments is
supported by substantial evidence in the record.

Disability under § 12.04 (affective disorders), is characterized by "a
disturbance of mood, accompanied by a full or partial manic or depressive
syndrome."  20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04, and requires
medically documented persistence, either continuous or intermittent, of four of
the following under § 12.04A1:

    (a)    Anhedonia or pervasive loss of interest in almost all activities; or
    (b)    Appetite disturbance with change in weight; or
    (c)    Sleep disturbance; or
    (d)    Psychomotor agitation or retardation; or
    (e)    Decreased energy; or
    (f)    Feelings of guilt or worthlessness; or
    (g)    Difficulty concentrating or thinking; or
    (h)    Thoughts of suicide; or
    (i)    Hallucinations, delusions or paranoid thinking; . . .
      AND
    B.    Resulting in at least two of the following:
     1.    Marked restriction of activities of daily living; or
     2.    Marked difficulties in maintaining social functioning; or
     3.     Marked difficulties in maintaining concentration, persistence, or pace; or
     4.    Repeated episodes of decompensation, each of extended duration. OR
    C.    Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
     1.    Repeated episodes of decompensation, each of extended duration; or
     2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
     3.    Current history of 1 or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

To establish disability under § 12.04, the Plaintiff must meet the criteria either for both § 12.04A and § 12.04B, or for § 12.04C. In this case, the ALJ did not address whether Plaintiff meets the criteria of § 12.04A, but instead limited his discussion to § 12.04B and § 12.04C, presumably because substantial evidence in the record supports Plaintiff's depression met the criteria of severity under § 12.04A.

In particular, Plaintiff does very little, seldom goes out of the house, only leaves the house for appointments, and, although she used to socialize with friends, the only social activity she is engaged in is Alcoholics Anonymous meetings. (R. 71, 79, 81). Substantial evidence in the record also shows Plaintiff experienced changes in her appetite, and subsequently her weight, causing her to gain and lose significant amounts of weight in relatively short periods of time (R. 111, 117 (16 lb. weight loss in six months), 109 (establishing 8 lb. weight loss over two month period between June 20, 2006 and August 20, 2006)), thus meeting the requirement of § 12.04A1(b); and that Plaintiff experienced continuous sleeplessness as a result of her depression (R. 117, 135, 143, 146, 151, 207), thus meeting the requirements under § 12.04A1(c). Plaintiff exhibited intermittent symptoms of psychomotor agitation, on March 1, 2007, May 14, 2007, and March 11, 2008, as required by § 12.04A1(d), exhibited feelings of guilt, particularly with regard to her ability to manage her children (R. 129, 141), as required by § 12.04A1(f), and experienced difficulty concentrating and thinking (R. 133, 151, 186, 208), as required by § 12.04A1(g). Plaintiff also testified she experienced suicidal thoughts (R. 257), as

required under § 12.04A1(h). In sum, substantial evidence in the record supports Plaintiff's depressive syndrome satisfies the requirements of § 12.04A1 with Plaintiff exhibiting seven of the listed criteria under § 12.04A1 for which only four are required.

Once the criteria of § 12.04A are met, substantial evidence in the record must demonstrate Plaintiff exhibited at least two of the following: (1) marked restrictions of activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.04B ("§ 12.04B"). In particular, under § 12.04B, activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. 404, Subpt. P, App. 1, § 12.00C1. "Marked" is not defined by a specific number of different activities of daily activity in which daily functioning is impaired, but by the nature and overall degree of interference with function. *Id*. In this case, the ALJ reviewed the evidence in the record, determined Plaintiff did not have a marked degree of limitation with regard to daily living, social functioning, persistence or pace, or repeated episodes of decompensation. (R. 17-18).

Although Dr. Gumbula evaluated Plaintiff in the April 21, 2008, medical residual functional capacity assessment (R. 133), as having "marked" limitations in activities of daily living, repeated episodes of decompensation of extended

duration, extreme difficulties in maintaining social functioning, and constant deficiencies in maintaining concentration, persistence or pace, the ALJ granted Dr. Gumbula's assessment less than controlling weight because the assessment was inconsistent with, and thus not supported by, Dr. Gumbula's treatment notes. A plain reading of the relevant treatment notes supports this finding, and thus, the ALJ's decision not to grant Dr. Gumbula's opinion weight is supported by substantial evidence in the record. As such, despite meeting the criteria under § 12.04A, Plaintiff does not meet the criteria under § 12.04B, and thus establish disability under the Listed Impairment. With regard to the criteria of § 12.04C, the record is devoid of evidence establishing Plaintiff has experienced repeated episodes of decompensation, each of extended duration (§ 12.04C1), a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or environmental change would cause Plaintiff to decompensate (§ 12.04C2), or an ability to function outside a highly supportive living arrangement (§ 12.04C3). [7] The ALJ's determination that Plaintiff's mental impairment does not meet the criteria for disability under § 3.03 or § 12.04C is thus supported by the record. The court therefore proceeds to the next step of the inquiry.

**E.     "Residual Functional Capacity" to Perform Past Work**

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work. "Residual functional

---

[7]No evidence in the record suggests Plaintiff resides in any supportive living arrangement.

capacity" is defined as the capability to perform work comparable to the applicant's past substantial gainful activity. *Cosme v. Bowen*, 1986 WL 12118, at *3 (S.D.N.Y. Oct. 21, 1986).

In this case, the ALJ determined Plaintiff's non-exertional limitations precluded the performance of any past relevant work as a small products assembler, janitorial cleaner, or data entry clerk. (R. 19). Plaintiff does not contest this finding.

**F.**     **Suitable Alternative Employment in the National Economy**

The ALJ concluded Plaintiff was unable to perform past relevant work as a a small products assembler, janitorial cleaner, or data entry clerk, and determined whether Plaintiff would be qualified or suitable for any position within the national economy. (R. 19). The Second Circuit requires that "all complaints . . . must be considered together in determining . . . work capacity." *DeLeon,* 734 F.2d at 937. Once an ALJ finds a plaintiff's impairments prevent a return to previous work, the burden shifts to the Commissioner to prove substantial gainful work exists and that the plaintiff is able to perform in light of her physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. *Gold v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294

(2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[8] *Decker*, 647 F.2d at 294. In addition, the Commissioner must prove that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[9] *Id*. at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296.

In this case, the ALJ properly determined Plaintiff was unable to perform any past relevant work (R. 19), and the Plaintiff does not contest this finding.

---

[8]  "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §404.1567(a).

[9]  The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".  *Decker, supra*, at 295.
   "Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §404.1568(a).
   "Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §404.1568(b).

Plaintiff, however, contests the ALJ's further determination that Plaintiff had the residual functional capacity to perform "light" work. *Id*.

The Second Circuit has directed that where a disability benefits claimant cannot perform the full range of sedentary work, a strict, mechanical application of the Act's medical vocational grids is improper; rather, the plaintiff must be evaluated on an individual basis, and that such evaluation "can be met *only* by calling a vocational expert to testify as to the plaintiff's ability to perform some particular job." *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989) (italics added) (reversing district court's decision upholding denial of plaintiff's claim for disability benefits and remanding for further evaluation of plaintiff on an individual basis, including testimony by a vocational expert, given that the medical-vocational grids do not apply to claimants who are unable to perform the full range of sedentary work). Furthermore, following a vocational expert's testimony, a plaintiff must be afforded an opportunity to rebut the expert's evidence. *Id*.

In the instant case, the ALJ concluded Plaintiff was unable to perform any past relevant work as a small parts assembler (light, unskilled work), janitorial cleaner (medium, semi-skilled), and data entry clerk (sedentary semi-skilled work). (R. 19). The ALJ posed hypothetical exertional and non exertional limitations to the VE related to Plaintiff's limitations (R. 264-69), and the VE reviewed Plaintiff's credentials and limitations, and concluded that substantial gainful employment opportunities exist that an individual of the same age and education as Plaintiff, who was capable of, at most, light and/or sedentary exertion, was capable of performing. (R. 52). The ALJ posed a  hypothetical

situation to the VE that included limitations particular to Plaintiff, including, exposure to hazards such as unprotected heights and dangerous machinery, environmental factors such as temperature extremes, excessive humidity, fumes, dust, airborne particles, simple routine tasks totaling no greater than one sixth of an eight hour day, only occasional change in work processes, incidental interaction with the general public, and no piecework at a production rate pace (R. 264-65). The VE opined that Plaintiff, including the limitations posed by the ALJ to the VE, would be capable of performing the positions of plastic molding machine tender, and packaging machine tender. (R. 267). The ALJ changed the hypothetical to include the accommodation for unscheduled rest breaks throughout the course of an eight hour day, which the VE opined would result in total erosion of the occupational base for the positions of plastic molding machine tender and packaging machine tender. (R. 268).

The Act requires the ALJ use the same residual functional capacity assessment used to determine if a claimant can perform past relevant work when assessing a calamint's ability to perform other work. 20 C.F.R. § 404.1550(c)(2). "Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (citing *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir. 1987)). ALJ's are required to provide, at a minimum, the reasons for their decisions, *Connor*, 900 F. Supp. 994, 1003 (N.D.Ill. 1995) (citing *Diaz v. Chater*, 55 F. 3d 300, 307 (7th Cir. 1995)), and remand is proper for consideration of additional evidence not previously addressed. 42 U.S.C. § 405(g), *Connor*, 900 F.

2d at 1004 (remand where ALJ failed to consider entirety of VE's testimony).

In this case, the ALJ concluded, without explanation, that Plaintiff was not disabled even after the VE concluded, in response to the ALJ's final hypothetical, that unscheduled rest breaks would totally erode, *i.e.*, remove the occupational base of plastic molding machine tender and packaging machine tender. (R. 269). "There must be 'substantial record evidence to support the assumption upon which the vocational expert base[s] his opinion'" *Melendez v. Astrue*, 630 F. Supp. 2d 308, 318 (S.D.N.Y. 2009) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)). Where, as here, the VE's testimony is essential to a finding of disability, failure to address the VE's determination requires remand, and the ALJ, at a minimum, must articulate the reasons for his decision not to follow the VE's determination that Plaintiff would not be able to perform any work in the national economy if she needed to take unscheduled rest breaks. While it may be that the ALJ presented the final hypothetical to the VE despite the ALJ's disbelief that Plaintiff, in fact, required such unscheduled rest breaks, the ALJ's failure to explain as much requires remand. *Connor,* 900 F. Supp. at 1004 (remand ordered where ALJ did not explicitly consider the testimony of the VE on cross-examination).

Therefore, the matter should be remanded for a rehearing, including testimony from a VE, to whom the ALJ presents hypotheticals that accurately reflect all of Plaintiff's impairments, and a decision explaining why the ALJ either accepts, or fails to accept the VE's determinations in response to such hypotheticals.

## CONCLUSION

Based on the foregoing, Defendant's motion for judgment on the pleadings (Doc. No. 7), should be DENIED and the matter remanded for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g).

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 28, 2010
            Buffalo, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Limited, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      July 28, 2010
            Buffalo, New York